**R. D. BUDD, and E. L. BUDD, his wife, v. J. Y. GOOCH CO., INC,. a Florida corporation, and ROBERT L. WEED, ARCHITECT, INC.**

9 So. (2nd) 633                    Special Division B
July 31, 1942          Rehearing Denied September 25, 1942

Robert C. Lane, for appellants.

Bouvier, Goldberg & Haskins, for Appellee J. Y. Gooch, Inc., and Thomas J. Ellis, for Appellee Robert L. Weed, Architect, Inc., appellees.

CHAPMAN, J.:

During the year 1936 R. D. Budd was the owner of certain lots situated in Section 3 of Miami Shores, Dade County, Florida. He employed Robert L. Weed, Architect, Inc., to design a residence costing approximately $25,000.00 to be constructed on his lots located in Miami Shores. The plans and specifications of the residence as prepared by Weed & Company were accepted and the architectural services of the latter retained and compensation agreed upon as six per cent of the total cost of construction of the residence.

On July 25, 1936, R. D. Budd entered into a written contract with J. Y. Gooch., Inc., whereby the latter stipulated and agreed to construct the residence on the property of Budd according to the plans and specifications of Weed & Company, Architects, for the total sum of $23,175.00, plus additional work, if any, ordered by Budd. Subsequent and additional work was performed by the contractor for Budd at a cost of $1,681.72, making the total cost of the residence in the sum of $24,856.72. It is alleged that Budd paid the sum of $24,856.72, less the amount of $5,431.09. The residence was certified, with minor exceptions, as completed on February 8, 1937. The contractor, J. Y. Gooch Co., Inc., filed suit in the Circuit Court of Dade County under the provisions of Chapter 17097, Acts of 1935, Laws of Florida, to enforce and foreclose a

lien. Likewise the architect Weed assertsd a lien on the property for the balance due for architectural services in the sum of $974.16.

In a counter claim filed by Budd against the architect Weed & Company, it was admitted that the latter was employed to design his proposed residence and after acceptance of the designs, they were engaged to prepare the specifications and render inspection services during construction at a sum of six per cent of the total cost of construction; that while the balance of $974.00 may be due under the terms of employment, but that several acts of negligence on the part of the architect committed while so employed resulted in heavy losses to the owner and when these several amounts are set off against the asserted claim of Weed & Company there will remain due a large sum of money by Weed & Company to Budd.

The acts of negligence alleged to have been committed by the architect are viz.: (a) the architect neglected to take soundings of the land where the residence was to be constructed to thereby determine the sufficiency of the foundation to support the weight of the building, and as a result the walls and floors of the building cracked and the building sank in excess of the customary settlement, and the owner, Budd, placed additional foundations under the residence at a total cost of $869.42; that sound engineering principles required the construction of the house upon pilings; (b) the architect was negligent in specifying double hung, spring control, type of windows of a named manufacturer, which were improper and not designed for residences, and had to be replaced at a cost of $3,227.04; (c) an insecure foundation under the Terrazzo floors of the living and dining rooms was the

proximate cause of cracks which were repaired at a cost of $233.48; (d) for specifying improper timbers or steel insufficient in size to support the bathrooms, thereby causing the floors to sag and crack and the costs of repairs were in the sum of $13.32.

The owner, Budd, counter claimed against J. Y. Gooch Co., Inc., for the negligent and unworkmanlike manner in which the construction contract was performed and asserted the performance thereof by the contractor was not in accordance with the plans and specifications. The owner seeks a decree against the contractor viz.: (a) the sum of $125.00 necessarily paid by the owner to complete the Terrazzo stairway in a workmanlike manner; (b) $3,115.00 for changing the steel sash to wood sash; (c) $451.77 necessarily expended to place the plastering in a good workmanlike manner; (d) the cost of repainting the interior of the building; (e) $25.03 for replacing and re-setting tile; (f) $1,500.00 for an unreasonable delay in the completion of the building, on the theory that the same could have been rented for said sum to tourists had it been earlier completed; (g) additional miscellaneous items at stated amounts are counter claimed. A joint and several liability as to some of the enumerated items is asserted against Weed & Company and J. Y. Gooch Co., Inc.

On the issues presented considerable testimony was adduced by the parties before the Master, and after the completion thereof his report and recommendations as to a decree were presented to the Honorable H. F. Atkinson, Circuit Judge, and was heard upon exceptions to the filing of the Master's report and recommendations as to a final decree.

In the order dated June 14, 1939, Honorable H. F. Atkinson, Circuit Judge, expressed an opinion, based upon the evidence, that "the cracks in the walls and floor were caused by the settling of the building due to an insufficient foundation." It was his view the evidence showed the lot upon which the residence was constructed was on an "ancient fill" and "the foundation and footings appeared to have been laid by the contractor in accordance with the specifications which ordinarily would have been sufficient had the soil been firm, but in view of the circumstances, it is quite clear that the foundation and footings as specified were insufficient to support the weight of the building" and "this mistake apparently caused the major defects in construction." The chancellor further expressed his view viz.: "It is apparent to the Court that the greater part of the damage to the building was caused by insufficient foundation," and "the architect should be penalized to some extent for his failure to specify sufficient foundations for the residence, and the contractor likewise should be penalized to some extent for defects in construction caused by the insufficient foundation."

The cause, on the 14th day of June, 1939, was by an order of Judge Atkinson re-referred to the Master with directions to ascertain "the liability of the architect and the contractor for the faulty construction of the building." While testimony was being taken before the Master, Judge Atkinson died, and the cause was presented to Judge Williams, his successor, upon the report and recommendation of the Master on the original and the additional testimony, and Judge Williams, after due consideration, on December 15, 1941, entered a final decree deciding the equities of

the cause to be with the architect and contractor and against the owner, Budd, and dismissed the owner's counter claims. The opinion of Judge Williams recites, "it was a mistake and error on the part of this Court to re-refer this cause to the Master"; "the supplemental report of the Master dated December 4, 1940, is unacceptable, not in harmony with the testimony and evidence, and is rejected." Thus, as disclosed by the record, the two Circuit Judges, after considering the same record in the cause, reached opposite conclusions and entered decrees accordingly. The final decree entered by Judge Williams required Budd, the owner, to pay the contractor $5,306.09, with interest in the sum of $1,703.92; the architect the sum of $974.16, with interest in the sum of $312.76; the cost of the litigation in the total sum of $796.00; that upon the failure to pay said sums the property be sold to satisfy the amount of the decree.

Death removed Judge Atkinson and thereby prevented the possible entry of a final decree for the owner Budd against the architect and contractor. The successor Judge, on a subsequent hearing by a final decree, reversed the order previously entered by Judge Atkinson. The reversal thereof resulted in a substantial pecuniary loss to the owner Budd. The power of the successor Judge under the law to make and enter such an order is not necessary for adjudication, and a decision thereon is unnecessary. For authorities on the point see: 30 Am. Jur. par. 30, pages 750-1; 3 C. J. par. 103, pages 972-3; Hoffman v. Shuey, 223 Ky. 70, 2 S. W. (2d) 1049; 58 A. L. R. 842, and annotations on p. 848-9; Company A, First Reg. N. D. Nat. Guard T. School v. State, 55 N. D. 897, 215 N. W. 476, 54 A.L.R. 948, and annotations on page 952, et seq.

The record, consisting of approximately 700 pages, has been carefully studied and considered. The briefs have been read and the authorities cited carefully examined. We have been favored with able oral argument on the merits of the cause at the bar of this Court. The writer is of the view not concurred in by the other members of the Court, that the order entered by Judge Atkinson settling the equities of the cause did substantial justice between the litigants and the writer reluctantly consents to an affirmance because of the harshness of the decree appealed from.

Findings of a chancellor will not be disturbed on appeal to this Court if substantial evidence appears in the record and the conclusions so reached are not clearly erroneous. See Kent v. Knowles, 101 Fla. 1375, 133 So. 315; Farrington v. Harrison, 95 Fla. 769, 116 So. 497.

Affirmed.

BROWN, C. J., ADAMS and TERRELL, JJ., concur.

BROWN, C. J., concurring:

I think this record shows that the chancellor gave this case most careful and conscientious consideration. He also wrote an able opinion, reviewing the case, in which he said that he had read every line of the testimony and carefully examined the exhibits and also the house itself. I think his conclusions and decree are amply sustained by the evidence, and that this affirmance by this Court is thoroughly justified.

ADAMS, J., concurs.

ON PETITION FOR REHEARING

CHAPMAN, J.:

On petition for rehearing we have re-examined the record in this case and are still of the opinion that the

final decree of the chancellor should not be disturbed. It is not necessary to determine the right of the successor chancellor to enter an order which appears inconsistent with the one entered by the chancellor who originally exercised jurisdiction, because it is patent from the record that the latter had never entered an order disposing of the cause on its merits.

The petition for rehearing is denied.

BROWN, C. J., TERRELL and ADAMS, JJ., concur.